**UNITED STATES COURT OF APPEALS**

**FOR THE FIFTH CIRCUIT**

No. 97-60748

R.J. REED and KAREN REED,

Plaintiffs-Appellees,

VERSUS

NATIONAL HOME INSURANCE COMPANY
(A Risk Retention Group),

Defendant-Appellant.

Appeal from the United States District Court
For the Southern District of Mississippi
(3:97-CV-11-L-N)

December 17, 1998

Before REYNALDO G. GARZA, STEWART, and PARKER, Circuit Judges.

PER CURIAM:[*]

## I. Background and Procedural History

This case arises out of the plaintiffs' ("the Reeds'") purchase of a new home in Brandon, Mississippi. As part of the purchase, the builder enrolled the house in a 10-year structural

---

[*]Pursuant to 5TH CIR. R. 47.5, the Court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

1

warranty program which was underwritten by the defendant, National Home Insurance Company ("NHIC"). Later, while still under the warranty period, the Reeds' foundation began to crack, causing resulting damage to certain walls, doors, and windows. Pursuant to the warranty, the Reeds filed a claim with NHIC, which was denied after an initial investigation. As agreed upon in the warranty, the Reeds then submitted the disputed claim to arbitration. The Reeds were sent a copy of the National Academy of Conciliators' ("the NAC") "Rules and Procedures for the Conciliation and Arbitration of Home Warranty Disputes," which were agreed to govern this arbitration proceeding.

The initial arbitration hearing was held on June 13, 1996 at the Reeds' home. The arbitrator assigned to the case, E.R. Butterworth, independently inspected the home and was also provided with NHIC's engineering report. At the time of the hearing, however, the Reeds had been unable to secure a report from their engineer despite repeated efforts to get one. Because of this, although disputed among the parties, the Reeds contend that Butterworth granted them until June 20, 1996 to provide him with their engineer's report. The Reeds assert that Butterworth was aware that although an initial, summary report would be forwarded to him as soon as possible, an additional, more detailed report would also be forthcoming prior to June 20. In accordance with that understanding, they faxed the first report to the arbitrator immediately after the hearing. However, without awaiting receipt

of the Reeds' more detailed report, Butterworth issued his ruling the following day holding that the Reeds were not entitled to relief. Despite notification by the Reeds that the additional report was outstanding, Butterworth declined to reconsider his ruling.[2]

The Reeds then filed an appeal of Butterworth's decision and were informed that although an appellate arbitrator would review their appeal, no new evidence would be considered. The appellate arbitrator affirmed Butterworth's award on August 29, 1996, without considering the Reeds' detailed report which had, by that time, been completed. On December 5, 1996, the Reeds filed suit in federal district court alleging that the arbitrators were guilty of misconduct in their failure to honor the parties' agreement as to the submission of evidence. Despite the fact that the Reeds never filed a motion pursuant to the Federal Arbitration Act ("the FAA"), 9 U.S.C. § 12 to vacate the arbitration awards, the district court *sua sponte* reviewed the proceedings for compliance with FAA § 10.[3] After determining that the arbitrators failed to comply with FAA § 10, the district court vacated the award and remanded the case for

---

[2]Upon a request for clarification of the award by the Reeds, Butterworth reported that he was unaware that additional evidence was to be forwarded to him, and that he considered the initial report irrelevant because it contained no opinion as to the cause of the foundation cracks.

[3]Without considering the interesting question of whether a district court has the discretion to review an award for compliance with the FAA without a motion to vacate before it, we decide the merits of this appeal on other grounds.

further arbitration before a new arbitrator.  This appeal followed.


## II.  <u>Discussion</u>

A.  APPELLATE JURISDICTION

The Reeds first contest this court's appellate jurisdiction, arguing that the district court's vacatur and remand to a different arbitrator compel further arbitration and therefore constitute an unappealable interlocutory order.  We disagree.

While the general rule is that a final judgment is required before a party can resort to an appellate court, there are important exceptions to this rule.  This case falls into such an exception.  "Where the district court has vacated an award and ordered new arbitration by a different panel, its vacatur becomes reviewable pursuant to 9 U.S.C. § 15(a)(1)(E)."[4] *Forsythe Intern., S.A. v. Gibbs Oil Co.*, 915 F.2d 1017, 1020 (5th Cir.1990).  Accordingly, this court has appellate jurisdiction.

B.  STANDARD OF REVIEW

In reviewing a district court's vacatur of an arbitration award under FAA § 10, we review the district court's conclusions *de novo* to reconsider whether the arbitration proceedings were fundamentally unfair.  *See Forsythe*, 915 F.2d at 1020-21 (holding that *de novo* review enables this court to assess whether the district court accorded sufficient  deference to the arbitration

---

[4]Prior 9 U.S.C. § 15 is now codified at 9 U.S.C. § 16.

proceeding in the first instance). Therefore, we now consider whether the arbitration proceedings complained of in the district court were sufficiently unfair as defined in FAA § 10 to justify vacating the awards in favor of NHIC.

C.  THE MERITS OF THE VACATUR

"Judicial review of an arbitration award is extraordinarily narrow." *Antwine v. Prudential Bache Sec., Inc.*, 899 F.2d 410, 413 (5th Cir.1990); *see also Forsythe*, 915 F.2d at 1022 (noting that district courts should resist the temptation to condemn imperfect proceedings out of deference to the informal nature of arbitration). Specifically, judicial review of a commercial arbitration award is limited to Sections 10 and 11 of the FAA. *See Forsythe*, 915 F.2d at 1020. In this case, the district court relied on FAA § 10(a)(3) to conclude that the arbitration award should be set aside because "the arbitrators were guilty of misconduct which prejudiced the rights of one of the parties." *See* 9 U.S.C. § 10(a)(3). More specifically, the district court concluded that the arbitrators' failure to hear evidence pertinent and material to the controversy so affected the Reeds' rights that they were deprived of a fair hearing. *See Memorandum Opinion and Order*, Oct. 16, 1997; *see generally Forsythe,* 915 F.2d at 1023.

However, in our *de novo* review of the arbitration proceedings, we conclude that the Reeds were not deprived of a fair hearing based upon any misconduct by the arbitrators. As the district

6

court correctly cited in its opinion, "an arbitrator is not bound to hear all of the evidence tendered by the parties, [although] he must give each of the parties to the dispute an adequate opportunity to present its evidence and arguments." *Forsythe* at 1023. In light of the national policy favoring arbitration as a speedy and informal alternative to litigation, as long as an arbitrator has given the parties an adequate *opportunity* to present their evidence, we cannot say that the proceedings were fundamentally unfair.

1. The Initial Arbitration

At the initial arbitration proceeding, the Reeds were given adequate opportunities to present their evidence and arguments. First, both the arbitration rules agreed to by the Reeds and the letter from the arbitration service expressly notified the Reeds that their evidence needed to be presented at the proceeding which would decide the dispute. None of the parties have suggested that Butterworth would not have considered the Reeds' report had it been properly presented at the hearing. Second, the rules specifically allowed for a postponement of the hearing if one of the parties was unable to proceed for good cause. *See* NAC R. 9. This option, however, was never pursued by the Reeds. Third, the mere fact that Butterworth had discretionary authority under the rules also to consider evidence "as directed by the arbitrator," does not excuse the Reeds from not complying with the terms set out by the

7

arbitrator.[5]  *See* NAC R. 14.  Fourth, and most importantly, even if Butterworth had waited until June 20, 1996 to render a decision, the final report still had not been prepared.  In no way could we conclude that Butterworth was guilty of misconduct in not allowing the Reeds an opportunity to present their evidence, when the final report was not even ready until August 20, 1996 (approximately 68 days after the hearing).

2.  The Appellate Arbitration

Next, we consider if the appellate arbitrator were guilty of misconduct in limiting his review to the evidence before Butterworth in the initial arbitration proceeding.  NAC Rule 23 governs the appeal of an arbitration award by an initial arbitrator.  *See* NAC R. 23.  Section (f) specifically states that "[t]he appellate hearing is not a new hearing and the appellate arbitrator may not hear any new claims or evidence not produced at the initial hearing."  NAC R. 23(f).  Because the appellate arbitrator was bound to follow the NAC rules, it is clear that he committed no misconduct in refusing to consider new evidence at the

---

[5]Although Butterworth allegedly granted the Reeds an extension of time to get their evidence into him, upon the Reeds' request for clarification, Butterworth apparently either disagreed that the Reeds had been granted an extension or declined to grant the Reeds a further extension, as the final report had still not been completed at that time (over a month after the initial hearing). This decision was within his discretion.  *See* NAC R. 13, 15 (providing that the arbitrator is charged with interpreting the rules as they relate to the admission and relevance of evidence, as well as determining when the record is complete so that the hearings can be closed).

second hearing.  The appellate arbitration proceeding was not fundamentally unfair such as to justify disturbing the award.

### III.  <u>Conclusion</u>

Therefore, because the Reeds had adequate opportunities to present their evidence and arguments, but simply failed to take advantage of them in a diligent manner, we hold that the arbitration proceedings were not fundamentally unfair. Consequently, due to the substantial deference owed by the courts to arbitrators, we find no adequate basis for disturbing the arbitration award.  We therefore REVERSE the district court's vacatur and REINSTATE the arbitration award in favor of NHIC.